IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**                                                    **PLAINTIFFS**
*ex rel.* **ESTATE OF ROBYN TURNER**

**v.**                                                    Civil No. 1:18cv338-HSO-RHWR

**THE GARDENS PHARMACY, LLC,**
**DR. BRIAN TSANG, and ALBERT**
**TSANG**                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING RELATOR ESTATE OF ROBYN TURNER'S FIRST MOTION [79] TO RECOGNIZE RELATOR'S SHARE**

BEFORE THE COURT is Relator Estate of Robyn Turner's First Motion [79] to Recognize Relator's Share. Based upon its review of the record and relevant legal authority, the Court is of the opinion that the Motion [79] should be denied.

I. BACKGROUND

A.   Relator's factual allegations

This is a suit brought under the False Claims Act, 31 U.S.C. § 3729 ("FCA"). Relator Estate of Robyn Turner[1] ("Relator" or "Turner") alleges that Defendant The Gardens Pharmacy, LLC ("The Gardens") submitted or caused to be submitted false claims for payment to TRICARE and Medicare as a result of illegal kickbacks to prescribing doctors in violation of 31 U.S.C. § 3729. *Id.* Turner began working in

---

[1] On October 22, 2019, Relator Robyn Turner passed away. Mot. [11]. The Estate of Robyn Turner was opened on December 19, 2019, and the Court granted its request to be substituted as Relator in this action on March 25, 2020. Order [13].

1

February 2013 as a pharmacist on an as-needed basis at The Gardens. Compl. [1] at 2. After six months, Turner became the pharmacy manager and worked in that role until February 2014. *Id.*

According to Relator, The Gardens violated the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b)(2)(A) ("AKS"), by using sales teams to market various expensive compound drug formulations to doctors. *Id.* at 6. These sales teams were allegedly paid a commission for every physician referral they made to the pharmacy. *Id.* Referrals were tracked by the pharmacy and the sales agents, so that the sales agents could follow up with physicians and verify the accuracy of their commission checks. *Id.* at 7. Relator claims that Clark Levi, owner of The Gardens, openly discussed commissions with sales agents, and was in charge of making commission payments to sales agents. *Id.* These commission payments included payments for referrals for prescriptions covered by TRICARE and Medicare, programs funded by the federal government and covered by the AKS. *Id.*

Relator asserts that one sales agent in particular, Defendant Albert Tsang, was solely responsible for marketing pharmaceuticals to his father, Defendant Dr. Brian Tsang. *Id.* According to the Complaint, Clark Levi, who spoke openly about commissions paid to the other sales agents, was "particularly secretive about his dealings with Albert Tsang." *Id.* at 8. Relator alleges that The Gardens submitted claims to TRICARE and Medicare resulting from referrals that Albert Tsang obtained from Dr. Tsang. *Id.*

Relator contends that the conduct of paying commissions to sales agents violated the FCA and the AKS, and that the familial relationship between Dr. Tsang and Albert Tsang caused The Gardens to additionally violate the Stark Law, 42 U.S.C. § 1395nn. *Id.* The Government has elected to decline intervention in this case. Not. [8] at 1.

B.  Relator's Motion [79]

Relator has filed the present Motion [79] to Recognize Relator's Share, arguing that proceeds recovered by the Government in several separate criminal proceedings, including criminal forfeiture proceedings, against parties associated with The Gardens but not named in this lawsuit, should be recognized as part of the proceeds from which Relator may recover its percentage share of any ultimate recovery in this qui tam suit. Mem. [80] at 6. Relator identifies seven specific recoveries the Government obtained from parties allegedly associated with The Gardens:

> 1. $895,740.36 from accounts associated with The Gardens pursuant to a Warrant to Seize Property Subject to Forfeiture issued May 29, 2019.
> 2. $1,628,409 in criminal restitution ordered against Thomas Edward Sturdavant, M.D. pursuant to his guilty plea in *United States v. Thomas Edward Sturdavant, M.D.*, USDC SD MS, 2:19-cr-28-KS-MTP.
> 3. $160,000 in a money judgment forfeited by Thomas Sturdavant, M.D. in association with his guilty plea for soliciting and accepting kickbacks in the form of commission payments from The Gardens.
> 4. $4,800,526.47 in criminal restitution ordered against Shahjahan Sultan, M.D. pursuant to his guilty plea in *United States v. Shahjahan Sultan, M.D.*, USDC SD MS, 2:19-cr28-KS-MTP.

3

>   5. $2,324,945.54 forfeited by Shahjahan Sultan, M.D. in conjunction with his guilty plea for receiving kickbacks from The Gardens.
>   6. $16,333,583 in criminal restitution ordered against Jeffrey Wayne Rollins pursuant to his guilty plea in *United States v. Jeffrey Wayne Rollins*, USDC SD MS, 2:20-cr-39- KS-MTP. Of this amount, $8,711,244.27 is associated with reimbursement to Medicare and $2,341,146.90 is associated with reimbursement to TRICARE.
>   7. $16,333,583 in criminal restitution ordered against Dempsey "Bryan" Levi pursuant to his guilty plea in *United States v. Dempsey "Bryan" Levi*, USDC SD MS, 2:20-cr-38-MTP [sic].

Mot. [79] at 1-2.

Relator takes the position that it is entitled to a share of these proceeds, because the FCA permits qui tam plaintiffs to recover a share where the Government pursues an "alternate remedy," instead of joining the qui tam plaintiff's civil suit. Mem. [80] at 5 (citing 31 U.S.C.A. § 3730(c)(5) and 31 U.S.C.A. § 3730(d)).

The Government opposes the Motion, arguing that Relator is not entitled to proceeds from these criminal forfeiture and restitution awards, because they do not constitute alternate remedies under the FCA. Mem. [86] at 1. The Government further contends that even if Relator could somehow claim an interest in criminal forfeiture and restitution awards, the specific criminal actions from which Relator seeks a share involved different claims against entirely different defendants. *Id.*

## II. DISCUSSION

A.  Applicable legal standards

The False Claims Act, 31 U.S.C. §§ 3729 – 3733 ("FCA"), is violated if any person presents to the Government false or fraudulent claims for payment or

4

approval. 31 U.S.C. § 3729. The FCA "prohibits false or fraudulent claims for payment to the United States, 31 U.S.C. § 3729(a), and authorizes civil actions to remedy such fraud to be brought by the Attorney General, § 3730(a), or by private individuals in the Government's name, § 3730(b)(1)." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 (2007).

"Notwithstanding subsection (b) [which provides that a person may bring a civil action for a violation of section 3729 both for the person and the Government], the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 160 (5th Cir. 2014) (citing § 3730(c)(5)). If the Government pursues an alternate remedy, "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under" the qui tam section of the False Claims Act. *Id.* In this case, Relator maintains the criminal forfeiture proceedings it has identified constituted alternate remedies pursued by the Government. Mem. [80] at 5.

B.  Analysis

Relator argues that the FCA's "alternate remedy" provision permits the Court to recognize a share of the Government's recovery obtained from defendants in the different criminal cases because they were part of the general scheme Turner alleged in the Complaint. Mem. [80] at 5. To support this position, Relator relies heavily upon an unpublished 2005 decision from the United States District Court

5

for the Southern District of Indiana, *United States v. Bisig*, Crim No. 02–112, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005). In *Bisig*, the court permitted the relator to claim a share of the recovery in a criminal forfeiture action involving the owners of the defendant corporation. *Id.* at *6. A number of courts have expressed reluctance to follow *Bisig* or otherwise weigh in on the issue of whether criminal forfeiture or restitution recoveries can qualify as alternate remedies under the FCA. *See, e.g., United States v. Kurlander,* 24 F. Supp. 3d 417, 423 (D.N.J. 2014), as amended (June 11, 2014); *United States v. Couch*, 906 F.3d 1223, 1228 (11th Cir. 2018). However, the Court finds that it need not resolve this question because Relator has not shown that the scheme alleged in this case against The Gardens and the Tsangs is the same as the ones pursued by the Government in the other criminal proceedings at issue.

Even if criminal forfeiture proceedings could be considered alternate remedies under the FCA, Relator would not be entitled to a share of the proceeds here because the conduct alleged in the Complaint is not the same conduct that resulted in the restitution and forfeiture awards in the separate criminal cases Relator cites in its Motion [79]. Relator argues that The Gardens is now defunct, such that Relator should be allowed to obtain a share of the Government's recoveries in the other actions against "accounts associated with The Gardens," Mem. [80] at 2, as well as against individuals who participated in the scheme Relator has alleged, Rebut. [87] at 2. Relator maintains that the claims against The Gardens share the same factual basis as the referenced criminal proceedings,

6

thereby entitling Relator to a share of proceeds from the Government's actions against those defendants. Mot. [79] at 1-2.

In order for the Court to accept this argument, the criminal forfeiture and restitution payments over which Relator asserts an interest must involve similar conduct to that alleged in the Complaint. *See, e.g., United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 500 (6th Cir. 2007). In *Bledsoe,* the relator alleged that the defendant healthcare system engaged in several fraudulent practices, including coding contract services at a higher billing rate, double-billing, and billing for medical care that was never provided. *Id.* at 498. The defendant entered into a settlement agreement with the Government arising out of its practice of miscoding inpatient admissions and diagnoses. *Id.* Government agents interviewed the relator during the criminal investigation and determined that the information provided by the relator was unrelated to the defendant's conduct that ultimately resulted in criminal charges. *Id.* at 498-99.

The relator in that case claimed that he was entitled to a share of the proceeds obtained from the defendant's settlement agreement with the Government. *Id.* at 521. The Sixth Circuit concluded that because the relator did not allege the same conduct as that which the Government had alleged when it obtained the settlement, the relator was not entitled to a share of the Government's proceeds. *Id.* at 522. As the court put it, "a relator is not entitled to settlement proceeds that *potentially* overlap" with his claims. *Id.* (emphasis added). "Qui tam proceeds are available not to persons who inform the government of wrongdoing, but are only

available when the government proceeds 'with an action'" involving that same wrongdoing. *Id.* (citing 31 U.S.C. § 3730(d)(1)).

In the present case, the criminal proceedings over which Relator asserts an interest cover distinct parties and distinct conduct from that alleged in the Complaint. The Complaint [1] focuses on The Gardens's sales teams and their receipt of commissions for marketing higher-reimbursement compound drugs to prescribers. *See* Compl. [1] at 6. Relator alleges that the specific sales team named in the Complaint, "Garden's Coasteam, LLC," operated from April 2013 through December 2014, *id.* at 7, and focuses on the relationship between Dr. Brian Tsang and Albert Tsang and how their actions allegedly violated the Stark Law, *id.* at 8.

Conversely, the Government's criminal investigations and subsequent recoveries cited by Relator in its Motion focused on schemes to substitute more profitable chemical compounds when they were not medically necessary in order to bill more expensive prescriptions to TRICARE and Medicare Part D. Mem. [86] at 6-7. While Relator's Complaint [1] focused on the Tsangs, the Government's criminal cases involved allegations against Alvix Labs, Bryan Levi, Jeffrey Rollins, Dr. Sultan, and Dr. Sturdavant. Ex. [85-1] at 1-2. Moreover, the relevant dates of the activity alleged by Relator do not overlap with the dates of the conduct involved in the Government's criminal investigations. Robyn Turner was employed at The Gardens from February 2013 until February 2014, Compl. [1] at 2, while the Government's investigations and subsequent prosecutions focused on "allegations of healthcare fraud beginning in mid-2014 through 2015," Ex. [85-1] at 1-2. As the

8

Government states in its brief, "Relator's employment with Gardens Pharmacy pre-dates the wrongful conduct that is the subject of the guilty pleas," Mem. [86] at 5, and therefore she could not have assisted in those investigations. The Government further maintains that its criminal investigations were opened independently from Relator's qui tam suit. *Id.* at 3.

Relator also seeks a share of the forfeitures "from accounts associated with The Gardens," presumably referencing the forfeiture the Government obtained from Alvix Laboratory accounts. Mem. [80] at 2. However, the Federal Bureau of Investigation ("FBI") concluded that "Relator did not provide the FBI with any information on Alvix Labs." *Id.* In addition, Relator's allegations of violations of the Stark Law, which were a minor aspect of The Gardens's TRICARE and Medicare Part D claims, did not represent a significant portion of the assets seized from The Gardens before it dissolved, because prescriptions dispensed by Dr. Tsang totaled less than $4,000.00, where the total criminal forfeiture proceeds were $924,114.40. Ex. [85-1] at 3. "A review of TRICARE claims data from January 2014 to May 2019 indicates that Dr. Tsang wrote 4 prescriptions for 2 patients . . . for a paid amount of $3,494.71. A review of Medicare Part D claims data from January 2014 to May 2019 indicates that Dr. Tsang wrote 18 prescriptions for 6 patients . . . for a paid amount of $573.66." *Id.* Even if Alvix Labs and The Gardens were somehow related, these comparatively very minor amounts related to Dr. Tsang are insufficient, in the Court's view, to justify awarding Relator a share of these proceeds.

Furthermore, Ms. Turner could not have assisted the FBI in its investigation or acted as a whistleblower in those cases, because the FBI had not "identified Ms. Turner as an individual with useful information." *Id.* at 2. The FBI interviewed Ms. Turner in January 2019 and determined that she possessed a "limited scope of knowledge" of the relevant criminal conduct, as she was primarily involved in the retail aspect of The Gardens, rather than in an area where she could have gained knowledge about the relevant chemical compound scheme. *Id.* The FBI noted that Turner did not provide any information about Dr. Sultan or Dr. Sturdavant and did not even recognize pictures of them. *Id.*

Relator's assertion of a stake in the Government's criminal recoveries is similar to that asserted by the relator in *U.S. ex rel. Smart v. CHRISTUS Health*, No. 2:05-CV-287, 2013 WL 2289883, at *3 (S.D. Tex. May 22, 2013), *aff'd sub nom. U.S. ex rel. Smart v. Health*, 563 F. App'x 314 (5th Cir. 2014). In that case, the relator sought a share of the Government's recovery from a settlement agreement arising out of the defendant's fraudulent patient admissions process and billing practices, but the relator's complaint involved allegations against three of the defendant's hospitals that the defendant had rented office space to doctors at below-market rent in exchange for patient referrals. *Id.* at *3. The relator did not mention billing practices in his complaint, and he did not mention the specific hospitals where the defendant engaged in the conduct relevant to the Government's settlement agreement. *Id.*

The court held that the relator was not entitled to a share of the other recoveries under the qui tam portion of the False Claims Act, because he played no role in uncovering the defendant's fraudulent behavior and did not identify the same hospitals from which the Government obtained a settlement. *Id.* at *4. Here, although Relator alleged, at most, a scheme loosely related to the one the Government prosecuted, the parties and the alleged activities are plainly not the same and the overlap, if any, is minimal. For these reasons, Relator has not shown that it is entitled to, or has an interest in a share of, the Government's criminal recoveries that this Court can recognize. The Motion [79] should be denied.

### III. CONCLUSION

After a thorough review and consideration of the First Motion [79] to Recognize Relator's Share, the record as a whole, and relevant legal authority, the Court concludes that the Motion [79] to Recognize Relator's Share should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Estate of Robyn Turner's First Motion [79] to Recognize Relator's Share is **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 9th day of June, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE