**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES ex rel.**                                              **RELATOR**
**ESTATE OF ROBYN TURNER**


**v.**                                                         **Civil No. 1:18cv338-HSO-BWR**


**THE GARDENS PHARMACY, LLC**                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART RELATOR ESTATE OF ROBYN TURNER'S MOTION
[133] FOR SUMMARY JUDGMENT AND DIRECTING THE PARTIES TO
FILE ADDITIONAL BRIEFING PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 56(f)**

BEFORE THE COURT is Relator Estate of Robyn Turner's Motion [133] for

Summary Judgment. The Motion [133] is fully briefed. After due consideration of

the record and relevant legal authority, the Court finds that Relator Estate of

Robyn Turner's Motion [133] for Summary Judgment should be granted in part as

to certain payments made to Albert Tsang, and denied in part as to all other alleged

kickbacks, and that the parties should be directed to file additional briefing

pursuant to Federal Rule of Civil Procedure 56(f).

## I. BACKGROUND

A.    Factual background

This case involves an alleged kickback scheme promulgated by Defendant

The Gardens Pharmacy, LLC ("Defendant" or "Gardens") to increase referrals to its

pharmacy. *See generally* Compl. [1]. Relator Estate of Robyn Turner ("Relator")[1] alleges that Defendant was a compounding pharmacy that made "custom-tailored" pain creams for patients using a formulation created by the patient's physician. *Id.* at 6; Ex. [133-15] at 6-7. Gardens contracted with different independent sales consultants who marketed Defendant's services to physicians along the Mississippi Gulf Coast. Compl. [1] at 7-8; Ex. [133-3] at 1-3; [133-4] at 1-4; [133-15] at 6-8. In exchange for marketing services, Defendant agreed to pay commissions to a sales consultant that were based on the reimbursement it received for any prescriptions procured by the consultant. Ex. [133-4] at 1. Relator claims that sales consultants would "'tag' doctors and clinics as a method of claiming referrals for commission purposes." Compl. [1] at 7; *see* Ex. [133-12] at 1. The Complaint [1] alleges that Defendant had three sales teams which referred doctors to Defendant: (1) the Gardens Coasteam, LLC ("Coasteam") which "consisted of Laurie Turfitt, Tommy Turfitt III, and Amber Turfitt Kidd" (collectively "the Turfitts"); (2) a second sales team "managed by Felix Rodriguez[2] and Leah Roth"; and (3) a "one-person sales team" consisting of Albert Tsang "whose sole marketing target was his father," Dr. Brian Tsang. *Id.* at 6-8.

Defendant marketed itself as providing Medicare-approved prescriptions and as a "Tricare preferred Pharmacy." Ex. [133-9] at 3. TRICARE is "a federally funded

---

[1] Relator Robyn Turner passed away on October 22, 2019, Mot. [11], and the Estate of Robyn Turner was substituted as Relator on March 25, 2020, Order [13].

[2] Relator's Complaint [1] and summary judgment evidence are inconsistent as to the proper spelling of Felix Rodriguez's name. The Complaint [1] refers to him as "Felix Rodriguez," while the evidence suggests his name is "Felix Rodrigue." *See, e.g.*, Ex. [133-10] at 1. The Court will employ the spelling utilized in the Complaint [1].

health insurance program for members of the United States military and their dependents." *United States v. Marlin Med. Sols. LLC*, 579 F. Supp. 3d 876, 881 (W.D. Tex. 2022); Compl. [1] at 4. Defendant filed claims with Medicare and TRICARE seeking reimbursement for prescriptions, and Relator asserts that these claims included prescriptions procured through referrals from the sales consultants. Compl. [1] at 6-8; Ex. [133-1] at 6; [133-2] at 2.

B.    Procedural history

On October 22, 2018, Robyn Turner ("Turner"), who had worked as a pharmacist for Defendant from February 2013 to February 2014, filed the Complaint [1] in this case, asserting that Defendant's "scheme of paying commissions to induce referrals of services and products reimbursed by TRICARE and Medicare was prohibited by" the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(2)(A), and the Stark Law, 42 U.S.C. § 1395nn, and therefore violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. Compl. [1] at 1-3, 8. The Complaint [1] also named Albert Tsang and Dr. Brian Tsang as Defendants, claiming that the commissions paid to Albert Tsang for procurement of referrals from Dr. Brian Tsang also violated the Stark Law and the FCA. *Id.* at 1, 7-8. The United States declined to intervene on December 30, 2019. Not. [8].

While the case was under seal, Defendant filed articles of dissolution, Ex. [80-12] at 1, and may lack any assets to which any monetary judgment might attach, *see* Ex. [142-1] at 3-4. In light of Defendant's financial state, Relator previously filed a Motion [79] to Recognize Relator's Share, requesting that the Court find that

3

Relator was entitled to a share of criminal forfeiture and restitution proceeds recovered by the Government in separate criminal prosecutions against parties associated with Defendant. *See* Mot. [79] at 1-2. The Government filed a Response [85] in Opposition to Relator's Motion [79], arguing that the criminal recoveries do not qualify as alternative remedies under 31 U.S.C. § 3730(c)(5), and that "Relator does not allege the same claims or the same defendants as pursued in the criminal actions." Mem. [86] at 1.

The Court denied Relator's Motion [79], finding that "the scheme alleged in this case against [Defendant] is not the same as the ones pursued by the Government in the other criminal proceedings at issue." Order [105] at 6. The Court determined that "the relevant dates of the activity alleged by Relator do not overlap with the dates of the conduct involved in the Government's criminal investigations," and that the violations alleged in the Complaint [1] addressed kickbacks for referrals while the prosecutions "focused on schemes to substitute more profitable chemical compounds when they were not medically necessary." *Id.* at 8.

On November 7, 2022, all claims asserted against Defendants Albert Tsang and Dr. Brian Tsang were dismissed pursuant to a settlement reached between Relator, Albert Tsang, and Dr. Brian Tsang, to which the Government consented. Joint Stipulation of Dismissal [146]; Not. [147]; Order [148]. The only remaining claims are those against Gardens.

C.    Relator's present Motion [133]

Relator has now filed the present Motion [133] for Summary Judgment, "seek[ing] a ruling that (1) The Gardens is liable for violating the False Claims Act by engaging in a scheme to pay kickbacks to its independent sales representatives and (2) the value of false claims paid to The Gardens by the Defense Health Agency is $1,057,533.02." Mot. [133] at 2.[3] Relator argues that summary judgment should be granted in its favor because "the parties do not disagree on the facts" and "[t]he evidence establishes that [Defendant] intentionally paid commissions to independent sales representatives to market its compound medications and encourage referrals to the pharmacy." Mem. [134] at 2, 6 (emphasis removed).

Relator contends that it is entitled to recover "three buckets of damages" which "represent reimbursements made by the Defense Health Agency ('DHA') to The Gardens." *Id.* at 9. "Bucket One" totals $8,950.25 and consists of payments Defendant received from prescriptions of physicians associated with Albert Tsang. Mem. [134] at 10. "Bucket Two" amounts to $577,165.97 and includes payments received by Defendant as a result of prescriptions of physicians "identified on the physician lists provided by Amber Kidd" for seventeen sales representatives employed by the Coasteam. *Id.* at 8, 10. For its first two buckets of damages, Relator relies in part on claims data from Defendant supplied by the DHA which Relator sorted to identify payments associated with prescriptions from physicians

---

[3] It is unclear whether Relator is abandoning its FCA claim that asserts violations of the Stark Law. While Relator discusses the AKS in its summary judgment motion, *see* Mem. [134] at 3-6, neither its Motion [133] nor its supporting Memorandum [134] make any reference to the Stark Law, *see generally* Mot. [133]; Mem. [134].

connected with Defendant's sales agents. *Id.* at 9-10; Ex. [138-2]; [138-3]. "Bucket Three" is based on alleged commissions paid to Leah Roth ("Roth") in 2015. *Id.* at 10. Relator cites to a Form 1099 issued to Roth by Defendant reporting nonemployee compensation of $164,995.88, which Relator claims indicates Defendant "received at least $471,416.80 in 2015 derived from the unlawful kickback scheme." *Id.*; Ex. [133-14] at 1.

Defendant has responded to Relator's Motion [133] for Summary Judgment by filing a Statement of No Contest [141]. Defendant notes that it "does not contest Relator's motion," but "[s]hould this matter proceed to trial, Defendant reserves the right to object to and/or contest any information or evidence contained in Relator's motion." Statement of No Contest [141] at 1 & n.1.

In response to Relator's Motion [133] and Defendant's Statement [141], the Government filed a Statement of Interest [142] "to protect its interests" and address two issues: (1) its concern that Relator is "us[ing] this summary judgment motion as a means to circumvent the Court's prior ruling denying Relator a share of criminal recoveries against different defendants"; and (2) its "concerns with Relator's damage calculations as to buckets two and three." Statement of Interest [142] at 1, 5.

Regarding its first issue, the Government asserts that Relator has broadened the scope of the litigation from the Complaint's [1] allegations to try to create a factual overlap with the criminal prosecutions. *Id.* at 3-4. The Government argues that "Relator did not adequately plead, nor did she have personal knowledge of, the kickback schemes that are the subject of the present motion for summary judgment"

6

because Relator's present Motion [133] "focuses on a 2013 to 2015 kickback scheme" involving the Coasteam and seventeen sales agents, while her Complaint [1] only made "a passing reference to a 'Coast Team', Roth, Rodriguez, and the Turfitts." *Id.* at 3. Further, the Government has submitted a settlement agreement ("Agreement") between Relator and Defendant where Relator agreed to waive any collection against Defendant's members in exchange for Defendant declining to contest the summary judgment motion. Ex. [142-1] at 3-4.

This Agreement, dated October 12, 2022, provides that:

1.   The Gardens Pharmacy, LLC will enter a Statement of No Contest in relation to the motion for summary judgment currently pending in the federal action.

2.   The Gardens Pharmacy and/or its members and former members will produce an affidavit providing Claimant reasonable assurances that

   a)   The Gardens Pharmacy, LLC was dissolved via Articles of Dissolution on January 4, 2020.

   b)   The Gardens Pharmacy, LLC has made no distributions to members or former members since January 4, 2020.

   c)   The only funds in The Gardens Pharmacy, LLC's bank accounts open after January 4, 2020 were used to satisfy then-existing debts and bills of the LLC. The funds in those accounts were insufficient to satisfy the debts and bills owed by the LLC. No funds in those accounts were used to provide distributions to members after January 4, 2020, and all such accounts have since been closed.

   d)   The Gardens Pharmacy, LLC has had no assets to which any monetary judgment might attach since January 4, 2020.

3.   In consideration of the above, the Claimant hereby agrees to make no attempt to pierce the corporate veil in the event a

judgment or verdict is entered or assessed against The Gardens Pharmacy, LLC in the above-referenced federal litigation.

4.     Additionally, the Claimant hereby agrees to not attempt to collect any such judgment from any member or former member of The Gardens Pharmacy, LLC.

*Id.* The Government maintains that, in light of this Agreement and "the questionable viability of any collection from Defendant," Relator is again trying to seek a share of the criminal forfeiture and restitution proceeds previously denied by the Court. Statement of Interest [142] at 3-4.

Turning to Relator's damages calculations, the Government notes several problems. First, Relator uses an Exhibit [133-7] it claims is a physician list but it has not provided any evidence "to explain who created the 'physician list', when it was created, how or if Gardens used this list to calculate any commission payments, and whether the sales agents actually generated referrals tied to the names on the list for which they were paid commissions." *Id.* at 5-6. Second, Relator's evidence does not show that the sales agents were actually paid a commission. *Id.* at 6. In addition, Relator's calculations include damages from 2015 despite other evidence suggesting that the agreements upon which Relator's claims are based ended in April 2014. *Id.* at 7. Finally, regarding the damages attributed to Roth, the Government argues that Relator's calculations assume that Roth received a 35% commission and that the entire compensation from the 1099 was derived from TRICARE reimbursements rather than from total reimbursements, including from private insurance companies. *Id.*

8

Relator counters that the Government's arguments regarding the sufficiency of its allegations are untimely and that the Court should "withhold any judgment on the positions of the Government that are immaterial to the present motion for summary judgment," such as the Government's concern about a renewed motion to recognize a relator's share. Resp. [143] at 1-3. Additionally, because the Government has not intervened, Relator argues that it cannot contest the factual basis of the Motion [133]. *Id.* at 5. Concerning the Agreement between Relator and Defendant, Relator maintains that the Agreement merely sought to provide it with discovery into Defendant's assets at an earlier stage and "that if the information provided demonstrated that there were not recoverable assets, the Estate would not continue asserting fruitless remedies." *Id.* at 8.

The Government replies that Relator "lacks personal knowledge of the marketing schemes which are the subject of the summary judgment motion." Reply [144] at 3. Additionally, the Government states that Relator's Agreement with Defendant demonstrates that it is seeking an uncollectable judgment through the present Motion [133]. *Id.*

## II. <u>DISCUSSION</u>

A.   <u>Relevant legal authority</u>

1.   <u>Summary judgment standard</u>

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" are not competent summary judgment evidence. *Id.* (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). When considering the record, a court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in its favor. *Id.*

A court cannot grant a motion for summary judgment merely because it is unopposed. *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *Vasudevan v. Adm'rs of Tulane Educ. Fund*, 706 F. App'x 147, 152 (5th Cir. 2017). In addition, where, as here, the movant "bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial" in order to prevail on its summary judgment motion. *Int'l Shortshop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265-66 (5th Cir. 1991) (quotation omitted). A plaintiff seeking summary judgment therefore must "establish beyond peradventure *all* of the essential elements of the claim." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (emphasis in original) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Only after a plaintiff carries this burden must a defendant produce sufficient evidence to demonstrate a genuine dispute of material fact. *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 802 (5th Cir. 1993).

10

Under Federal Rule of Civil Procedure 56(f), a court may grant summary judgment independent of a party's motion. Fed. R. Civ. P. 56(f).  "After giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant" or "grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018).

2.  <u>Elements of an FCA violation</u>

The FCA provides several ways to impose liability on those who defraud the federal government. *See* 31 U.S.C. § 3729. Among others, a defendant can be liable if it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," § 3729(a)(1)(A), if it "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B), or if it "conspires to commit a violation" of the FCA, § 3729(a)(1)(C). Here, Relator's Complaint [1] alleges that Defendant violated § 3729(a)(1)(A) because it "submitted or caused to be submitted false or fraudulent claims to TRICARE and Medicare by submitting fraudulent billing to the Government as a result of illegal kickbacks to sales agents." Compl. [1] at 8. No other FCA violations are asserted in the Complaint [1].

Under 31 U.S.C. § 3729(a)(1)(A), a defendant is liable under the FCA if it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." An FCA claim has four elements: "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay

11

out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 653-54 (5th Cir. 2017) (quoting *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012)).

B.   Analysis

1.   Relator attempts to expand the scope of the Complaint [1]

As the Government's Statement of Interest [142] notes, a review of Relator's Motion [133] for Summary Judgment reflects that it expands beyond the scope of the kickback scheme alleged in the Complaint [1]. *Compare* Mem. [134] at 6-9, *with* Compl. [1] at 6-8. The Complaint [1] identified three sales teams: (1) the Coasteam, consisting of Laurie Turfitt, Tommy Turfitt III, and Amber Turfitt Kidd, which operated from April 2013 to December 2014; (2) a second team of Felix Rodriguez ("Rodriguez") and Roth; and (3) a third team with one member, Albert Tsang, who solely targeted his father, Dr. Brian Tsang, from 2013 to 2014. Compl. [1] at 2, 7. For the first time in its Motion [133], Relator now contends that the Coasteam had seventeen members in total, including Roth and Rodriguez, and that the kickback scheme extended through 2015. Mem. [134] at 6-8; Ex. [133-1] at 3-6.

Allegations raised for the first time in summary judgment briefing are not properly before the Court. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Montgomery v. Housby Mack, Inc.*, No. 3:15-cv-795-DPJ-FKB, 2016 WL 6427275, at *5 (S.D. Miss. Oct. 28, 2016). A plaintiff can "rely on new evidence that was not included in their pleadings but is related to their existing allegations," but cannot "circumvent the rules for amending pleadings by complaining of entirely new incidents for the first time" in summary judgment

filings. *Tolliver v. YRC, Inc.*, No. 3:15-cv-2554-C, 2017 WL 5640617, at *2 (N.D. Tex. Feb. 8, 2017); *see also United States ex rel. Brown v. Merant, Inc.*, No. Civ. A. 99-6481, 2002 WL 487160, at *6-7 (E.D. Pa. Mar. 29, 2002) (declining to consider claims asserted for the first time at the summary judgment stage in an FCA case). A defendant must have "fair notice of what the claim is and the grounds upon which it rests," *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)), and schemes first raised in a motion for summary judgment after the close of discovery unfairly hamper a defendant's ability to contest those claims, *see Brown*, 2002 WL 487160, at *6-7.

This concern is particularly relevant in FCA cases which are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud, and require a relator to "alleg[e] particular details of a scheme to submit false claims." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). An additional concern is the public disclosure bar, which requires dismissal of claims that were publicly disclosed unless brought by the Government or by an original source of the information. 31 U.S.C. § 3730(e)(4)(A); *see also Brown*, 2002 WL 487160, at *6-7 (noting the public disclosure bar and Rule 9(b)'s pleading standard as additional reasons to not consider FCA claims not raised in a complaint at the summary judgment stage).

Relator's Motion [133] adds twelve new sales agents to the kickback scheme who were never mentioned in the Complaint [1] and extends the time period into

2015, over a year after Turner stopped working for Defendant, and there is no indication that Turner, and by extension Relator, was the original source of this new information. *See* Compl. [1] at 2, 7-8; Mem. [134] at 8, 10-11; Ex. [133-1] at 3-5. While no party has affirmatively argued that Relator's claims are barred, the Government asserts that "any *ex post facto* attempt to amend the *qui tam* Complaint through this summary judgment motion poses public disclosure bar issues for Relator." Statement of Interest [142] at 4. It further notes that the "general marketing and commission payment kickback allegations are easily gleaned from the media involving investigations of compound pharmacy schemes in the Southern District of Mississippi from 2016-2018" and that Turner "reviewed indictments involving marketing by compounding pharmacies that she heard about before contacting the Government." Resp. [86] at 8.

In addition, Relator is not merely offering evidence of the scheme alleged in the Complaint [1]; it now seeks an affirmative summary judgment regarding asserted kickbacks paid to newly identified individuals based on facts which contradict the Complaint [1]. For example, while Relator states that these sales agents were members of the Coasteam alleged in the Complaint [1], the Complaint itself specified that the Coasteam "consisted of Laurie Turfitt, Tommy Turfitt III, and Amber Turfitt Kidd." Compl. [1] at 7. No mention or reference is made to there being other potential members.

As for Relator's asserted damages extending into 2015, only its allegations and summary judgment evidence relating to Albert Tsang permit an inference that

any kickbacks paid in 2015 were part of the same, unbroken scheme alleged in the Complaint [1]. *See* Compl. [1] at 7-8; Ex. [133-4] at 1 (noting that the agreement between Albert Tsang and Defendant "shall commence on the 17th day of July 2013, and shall continue for a period of two (2) years"); [133-16] at 1 (testimony of Albert Tsang that he performed services for Defendant from "[a]pproximately July 17, 2013 through July 17, 2015"). With respect to alleged kickbacks paid to the Coasteam, the Complaint [1] pled that the agreements began in April 2013 and ended in 2014, *see* Compl. [1] at 7, and Relator's summary judgment evidence demonstrates that the Coasteam unilaterally terminated its agreement with Defendant on April 4, 2014, Ex. [133-3] at 1.

The damages Relator seeks for alleged kickbacks to Roth also suggest that the compensation agreements for the other sales consultants changed between 2014 and 2015 because Relator argues that Roth was a member of the Coasteam in 2014 but later operated independently. Mem. [134] at 7-8; Ex. [133-20] at 1. Despite the Complaint [1] concentrating on an April 2013 to 2014 agreement, Compl. [1] at 7, Relator now claims entitlement to damages into 2015, including for Roth's separate 2015 agreement with Defendant, Mem. [134] at 10. Given that the Complaint's [1] allegations focus on kickbacks arising from a 2013 agreement that was terminated in 2014, Compl. [1] at 7; Ex. [133-3] at 1, Relator's new assertions of kickbacks from 2015 are not based on the same conduct alleged in the Complaint [1]. Relator further was put on notice that the Court understood its Complaint [1] as addressing conduct from 2013 to 2014 when it entered its Order [105] denying Relator's Motion

[79] to Recognize Relator's Share, but, despite this notice, it made no subsequent effort to amend its Complaint [1] to include conduct after 2014. *See* Order [105] at 8.

Relator could have sought to amend its Complaint [1] to include this broadened scheme and these additional individuals and damages. Instead, Relator waited until it filed the present Motion [133] to introduce these claims. While courts often treat new theories raised at summary judgment as a motion to amend, *Montgomery*, 2016 WL 6427275, at *5, amended pleadings were due by October 27, 2021, and discovery closed on August 5, 2022, Order [61] at 4. This Motion [133] was filed on September 16, 2022, almost a year after amended pleadings were due. Even if the Court construed Defendant's Statement of No Contest [141] as consenting to an amendment, Relator must still obtain the Court's approval and show good cause to amend its Complaint [1] at this late stage. *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) ("Although, Rule 15(a) of the Federal Rules of Civil Procedure ordinarily governs the amendment of pleadings, Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired." (quotation omitted)); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Despite the Government raising its concerns that Relator's Motion [133] extends beyond the matters alleged in the Complaint [1], *see* Statement of Interest [142] at 3-4, Relator has not explained to the Court why these allegations related to the twelve newly-introduced sales agents and the kickbacks paid in 2015 should be considered, or why it did not seek leave to amend sooner, *see* Resp. [143] at 1-5.

16

Accordingly, the Court finds that the Motion [133] impermissibly attempts to broaden the scope of the allegations raised in the Complaint [1], and that, as such, (1) claims of kickbacks paid to the twelve sales agents not named in the Complaint [1] and (2) claims of kickbacks paid in 2015 to any sales agent other than Albert Tsang are not properly before it, and these claims cannot be pursued in this case. To the extent Relator's Motion [133] could also be construed as a motion to amend its Complaint [1], Relator has not demonstrated good cause to amend the scheduling order to permit such an untimely amendment. Therefore, summary judgment on the foregoing claims will be denied and Relator will not be permitted to pursue them in this case. Thus, the allegations properly before the Court in this case are (1) kickbacks paid to Albert Tsang from July 17, 2013, to July 17, 2015, and (2) kickbacks paid to the Turfitts, Rodriguez, and Roth in 2013 and 2014.

2.   Whether Relator has shown entitlement to judgment as a matter of law on the merits

a.   The Anti-Kickback Statute

Relator's FCA claims are based on purported violations of the AKS. As relevant to Relator's claims, the AKS prohibits:

> knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment made be made in whole or in part under a Federal health care program, or
>
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(2); *see* Compl. [1] at 3, 6, 8. Accordingly, a violation of the AKS requires proof that (1) Defendant knowingly and willfully (2) offered or paid a remuneration (3) to induce a referral or a person to purchase a good or service and (4) that payment for that good or service may be made in whole or in part under a federal healthcare program. *See United States v. St. Junius*, 739 F.3d 193, 210 n.18 (5th Cir. 2013); *United States v. Miles*, 360 F.3d 472, 479-80 (5th Cir. 2004).

To act knowingly and willfully, a defendant "need not have actual knowledge of [the AKS] or a specific intent to commit a violation of [it]." 42 U.S.C. § 1320-7b(h). The necessary intent applies to the act that violates the AKS; therefore, a relator must only show that the defendant knowingly and willfully offered a renumeration to induce a referral for a patient covered by a federal healthcare program such as TRICARE. *See St. Junius*, 739 F.3d at 210. Regarding a defendant's intent in offering payment, a defendant violates the AKS so long as one purpose of the renumeration was to induce such referrals or purchases. *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998).

The text of the AKS provides that a "claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim" under the FCA. 42 U.S.C. § 1320a-7b(g); *Eli Lilly*, 4 F.4th at 262. This provision establishes that an AKS violation satisfies the first element of an FCA violation. But the text of the FCA requires a defendant to "*knowingly present*[]*, or cause*[] *to be presented*, a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1)(A) (emphasis added). Therefore, to prevail on an FCA claim based on a violation of the

AKS, Relator must also prove the additional element of the presentment of a claim based on an AKS violation, not solely a violation of the AKS. *See, e.g.*, *Guilfoile v. Shields*, 913 F.3d 178, 191-92 (1st Cir. 2019) (requiring proof of a violation of the AKS, a causal connection between any submitted claims and illegal kickbacks, and proof that the government was billed for claims in connection with the kickbacks); *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 99 (3d Cir. 2018) ("It follows that [a relator] may not prevail on summary judgment simply by demonstrating that [a defendant] submitted federal claims while allegedly paying kickbacks. . . . Instead, he must point to at least one claim that covered a patient who was recommended or referred [due to the kickback scheme]."); *Carrell v. AIDS Healthcare Found.*, 898 F.3d 1267, 1277 (11th Cir. 2018) (dismissing a complaint where relators alleged a violation of the AKS but "failed to establish that the [defendant] ever submitted a claim for an unlawfully referred patient"); *United States ex rel. Capshaw v. White*, No. 3:12-cv-4457-N, 2018 WL 6068806, at *3-4 (N.D. Tex. Nov. 20, 2018) (discussing whether the government had sufficiently pled all four elements of an FCA violation after finding that it had plausibly pled an AKS violation).

b.    <u>Relator's claim regarding Albert Tsang (Bucket One)</u>

Relator argues that Defendant violated the FCA by hiring Albert Tsang to promote pain creams on the Mississippi Gulf Coast. Compl. [1] at 7-8; Mem. [134] at 8-9. Relator cites to Albert Tsang's deposition testimony, where he stated that he received commissions from Defendant in exchange for promoting the pharmacy's

products and services, Ex. [133-15] at 6, 10, and to a contract signed by Albert

Tsang and Defendant's representative reflecting this agreement, Ex. [133-4] at 1-4.

The contract specified that Defendant "shall pay compensation to Tsang as a

commission in the amount of Forty Percent (40%) of the reimbursement for any

prescriptions the [sic] Tsang procure [sic]." *Id.* at 1. Albert Tsang testified that his

father, Dr. Brian Tsang, and Linda Bell wrote prescriptions related to payments he

received under the contract, Ex. [133-16] at 3, and that he considered himself to be

an independent contractor for Defendant, Ex. [133-15] at 8. Relator has also

submitted claims data from the DHA showing TRICARE reimbursements totaling

$8,950.25 paid to Defendant for prescriptions written by Dr. Brian Tsang and Linda

Bell in 2014 and 2015. Ex. [133-1] at 5-6; [138-2] at 1-2.

As the party with the burden of proof at trial, Relator is entitled to summary

judgment only if it establishes all of the essential elements of its claim. *Guzman*, 18

F.4th at 160. Relator's Motion [133] points to uncontested evidence that Defendant

paid Albert Tsang in exchange for referrals and that Defendant submitted claims

for TRICARE reimbursement for prescriptions written by physicians who were

referred to Defendant by Albert Tsang. *See* Mem. [134] at 6-10; *see generally* Ex.

[133-1]; [133-2]; [133-4]; [133-15]; [133-16]; [138-2]. Relator has shown that

Defendant entered into an agreement with Albert Tsang where Defendant would

pay him a commission for any prescriptions he procured, with no stated exemption

for prescriptions made under a federal healthcare plan. Ex. [133-4] at 1-4. Relator

has further demonstrated that Defendant submitted claims for payment to DHA for

20

prescriptions written by Dr. Brian Tsang and Linda Bell during the time period of Albert Tsang's contract with Defendant, Ex. [138-2] at 1-2, and Albert Tsang has admitted he received commission payments for prescriptions written by those physicians, Ex. [133-16] at 3. Defendant does not contest Relator's Motion [133], *see* Statement [141], and the Government has also indicated that it does not object to summary judgment in favor of Relator as to this claim, *see* Statement [142] at 5, 8.

Based on the foregoing, the Court finds that Relator has established that Defendant knowingly and willfully paid a commission to Albert Tsang to induce a referral to Defendant and that payment of at least some of those prescriptions was made under a federal healthcare plan. *See Miles*, 360 F.3d at 479-80 (stating the required proof for an AKS violation); Ex. [133-2] at 2; [133-4] at 1-4; [133-16] at 3; [138-2] at 1-2. Further, Relator has shown that prescriptions related to these referrals were presented for payment by the Government. Ex. [133-2] at 2; [133-16] at 3; [138-2] at 1-2. Because Relator has demonstrated that Defendant violated the FCA by presenting a claim for payment based on an AKS violation, Relator is entitled to summary judgment that Defendant submitted $8,950.25 in false claims to the DHA obtained by illegal kickbacks paid to Albert Tsang. *See* 31 U.S.C. § 3729(a)(1)(A); *Miles*, 360 F.3d at 479-80; *Eli Lilly*, 4 F.4th at 262.

c.   Relator's claims regarding the Turfitts, Rodriguez, and Roth (Buckets Two and Three)

Relator's summary judgment evidence regarding alleged kickbacks paid to the Turfitts, Rodriguez, and Roth does not "establish beyond peradventure *all* of the essential elements" of its claims as required to obtain summary judgment. *See*

*Guzman*, 18 F.4th at 160 (emphasis in original). Relator's evidence is insufficient to demonstrate the existence of an agreement to pay commissions for referrals for prescriptions from a federal healthcare program and it does not connect any alleged referrals to claims submitted to the Government for payment.

To purportedly demonstrate the existence of an agreement between Defendant and Amber Turfitt Kidd and Laurie Turfitt on behalf of the Coasteam, Relator relies on unsigned contracts. Mem. [134] at 6-7; Ex. [133-5] at 1-5. Although Relator cites to a letter from an attorney representing Defendant which speaks of two written contracts between Amber Turfitt Kidd, Laurie Turfitt, and Defendant, Ex. [133-3] at 1-5, and cites to an email from Amber Turfitt Kidd stating that a contract was signed, Ex. [133-5] at 1, the letter from Defendant's attorney reflects a dispute in April 2014 over the existence of a written contract and the terms of the agreement, Ex. [133-3] at 1-3, and the email acknowledges that the executed version of the contract differed from the version of the contract submitted as evidence, Ex. [133-5] at 1. While these documents suggest that there was apparently some kind of agreement between Defendant, Amber Turfitt Kidd, and Laurie Turfitt, the evidence actually submitted, an unsigned contract and evidence of a dispute over the terms of agreement, are not sufficient to establish that Defendant knowingly paid or offered to pay commissions to Amber Turfitt Kidd and Laurie Turfitt to induce referrals related to a federal healthcare program. *See Miles*, 360 F.3d at 479-80 (stating the required proof for an AKS violation).

Turning to Tommy Turfitt III and Rodriguez, Relator has not pointed the Court to any record evidence showing the existence of an agreement by Defendant to pay commissions to them. *See generally* Mem. [134]. Instead, Relator relies on unsupported inferences of illegal kickbacks based on "physicians lists," and emails sent to Tommy Turfitt III and Rodriguez, among others, that included a monthly report of prescriptions filled by Defendant as an attachment. Ex. [133-7] at 1, 13; Ex. [133-10] at 1.

The "physicians lists" are documents with the supposed names of sales agents and physicians located in Mississippi and Louisiana, *see* Ex. [133-7], but Relator has presented no evidence to show who created these documents or when they were created,[4] nor has Relator explained their purpose, *see* Ex. [133-2] at 1 (stating only that these documents were received pursuant to a subpoena duces tecum sent to the Turfitts). The lists make no reference to Defendant and there is no record testimony from anyone noting whether these lists are authentic or whether they represented doctors actually targeted by sales agents to refer to Defendant, or whether they were aspirational or prospective goals. In addition, some of the physicians named in the lists seemingly have no sales agent connected to them. *See* Ex. [133-7] at 4-7, 9-10.

---

[4] The only date referenced in this Exhibit [133-7] is December 3, 2013, which appears as part of the physicians' names allegedly connected to Rita Greene, one of the sales consultants who is not properly before the Court. Ex. [133-7] at 8. Further, there are other lists of physicians' names appearing in the Exhibit [133-7] which are also connected to Rita Greene, indicating that the lists in the Exhibit [133-7] may have been created at various times. *See id.* at 1.

While evidence at the summary judgment stage must only be capable of being presented in a form that would be admissible at trial, *see* Fed. R. Civ. P. 56(c); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017), the foregoing deficiencies require the Court to speculate as to the origin, date, and purpose of these lists. For one, without knowing when the lists were created, the Court cannot know whether they reflect any activity that occurred during the relevant time period of 2013 to 2014. Additionally, nothing in the lists or otherwise in the record indicates whether these lists were merely proposals regarding physicians whom the consultants could target or whether any actual referrals were made. *See* Ex. [133-7]. Relator's unsupported speculation that these lists were used to connect referrals to prescriptions is insufficient to prove the existence of any agreement by Defendant to pay illegal commissions. *See Pioneer Expl., L.L.C.*, 767 F.3d at 511 (stating that "speculation, improbable inferences, [and] unsubstantiated assertions" are not competent summary judgment evidence).

The emails upon which Relator relies likewise lack context explaining their purpose. They merely reflect that Defendant emailed the Coasteam and Rodriguez the gross numbers for prescriptions filled in February and March 2014, and they do not explain why Defendant sent this email or what role or relation, if any, the gross numbers had in the alleged kickback scheme. Ex. [133-10] at 1; [133-20] at 1. This is insufficient at the summary judgment stage to establish a relationship between

these individuals and Defendant as would be necessary to show a violation of the AKS.[5]

As for Roth, in addition to the emails, Relator has submitted a tax form showing payments from the Coasteam to Roth. Ex. [133-13] at 1. The mere fact that Roth received compensation from the Coasteam does not equate to sufficient evidence showing a knowing and willful agreement by Defendant to offer a commission to Roth in connection with a federal healthcare program. *See* Ex. [133-13] at 1; *Miles*, 360 F.3d at 479-80.

Relator has also offered insufficient proof of payments submitted to a federal healthcare program in connection with any induced referrals. Relator relies on DHA claims data which is insufficient because it seeks to connect referrals to claims based on the "physicians lists" discussed above. *See* Ex. [133-2] at 2; [133-7]. Putting aside the authenticity concerns with the lists and the inclusion of irrelevant claims in the DHA data submitted,[6] Relator's other evidence undercuts its argument that the lists and claims data accurately portray claims resulting from any illegal referrals. Comparing the gross numbers provided in the emails to the Coasteam with the DHA claims data demonstrates numerous prescriptions for the relevant months in the DHA claims data that do not appear in the gross numbers provided to

---

[5] Even if Relator's evidence could substantiate the existence of an agreement between the Coasteam and Defendant for illegal kickbacks, Relator has also not established the relationship between the Coasteam and Rodriguez or Tommy Turfitt. The emails from the Coasteam to these individuals with an attached report permits only speculation as to whether the recipients were employed by the Coasteam. *See* Ex. [133-10] at 1; [133-20] at 1.

[6] Relator's DHA claims exhibit contains numerous claims for prescriptions written after the Coasteam terminated its agreement, including at least one claim from 2016, and prescriptions allegedly associated with the twelve sales agents who are not properly before the Court. *See, e.g.*, Ex. [138-3] at 1.

the Coasteam. *Compare* Ex. [138], *and* [138-4], *with* [138-3]. A comparison reveals that a significant number of the DHA claims from November 2013 do not appear in the November 2013 reports provided to the Coasteam. *Compare, e.g.*, Ex. [138-3] at 15 (DHA claims data showing three prescriptions written by Hardy on November 21, 2013), *with* [138-4] at 10-11 (November gross numbers showing only two prescriptions from Hardy in November 2013 and only one on November 21, 2013); Ex. [138-3] at 9-11 (DHA claims data shows ten prescriptions written by Hawkins on November 11, 2013), *with* [138-4] at 10-11 (November gross numbers report also showing ten prescriptions written by Hawkins on November 11, 2013, but only two prescriptions have prices consistent with the DHA claims data); Ex. [138-3] at 18 (DHA claims data showing two prescriptions written by Shelby on November 20, 2013), *with* [138-4] at 22-23 (November gross numbers report showing no prescriptions written by Shelby on November 20, 2013). These evidentiary deficiencies are not limited to the November 2013 reports. *See, e.g.*, Ex. [138] at 5-6 (February 2014 gross report showing no prescriptions written by Grow on February 19, 2014); [138-3] at 5 (DHA claims data showing two prescriptions written by Grow on February 19, 2014). This raises serious questions as to the reliability of the evidence Relator uses to connect referrals to claims presented for payment.[7]

---

[7] Relator uses this evidence to reach a total of $577,165.97 in FCA damages for claims related to the Coasteam. Mem. [134] at 10. However in its demand letter regarding the dispute over the Coasteam's unilateral termination of their alleged agreement, Defendant's representative estimated that Defendant's overall revenue attributable to the Coasteam's efforts was around $250,000.00 per year. Ex. [133-3] at 4. It seems unlikely that Defendant's false claims to DHA associated with referrals from the Coasteam would greatly exceed its estimated overall revenue for all prescriptions associated with those referrals.

In sum, Relator has not provided a sufficient factual or legal basis to demonstrate that it is entitled to summary judgment on the claims for the Turfitts, Rodriguez, and Roth. Relator relies on speculation and unsubstantiated assertions as to whether a kickback scheme existed between Defendant and the Turfitts, Rodriguez, and Roth, and Relator has failed to connect these alleged referrals to any claims paid by the Government. This is insufficient to show that Relator would be entitled to a verdict at trial if its evidence were uncontroverted, and therefore summary judgment must be denied as to Relator's FCA claims for alleged kickbacks paid to the Turfitts, Rodriguez, and Roth. *Int'l Shortshop, Inc.*, 939 F.2d at 1265-66.

d.   Rule 56(f)

In light of the foregoing discussion, Relator has failed to establish the necessary proof to support its FCA claims as to kickbacks paid to the Turfitts, Rodriguez, and Roth even though discovery is now closed and trial is set for February 2023. Federal Rule of Civil Procedure 56(f) permits the Court to grant summary judgment for a nonmovant after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018). Accordingly, the Court hereby gives notice that, unless Relator can provide sufficient additional evidence which establishes a factual or evidentiary basis for pursuing these claims at trial, and which is capable of establishing proof of all required elements of a FCA violation, it intends to consider whether Defendant would be entitled to judgment as a matter of law as to these claims. The parties should file any response to this notice within 21 days from the date of this Order

addressing the deficiencies described herein, at which point the Court will consider whether to dismiss the claims regarding alleged kickbacks paid to the Turfitts, Rodriguez, and Roth on the basis that Relator lacks sufficient evidence to prove the essential elements of those claims.

### III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Relator Estate of Robyn Turner's Motion [133] for Summary Judgment is **GRANTED IN PART** as to kickbacks paid to Albert Tsang resulting in false claims submitted to the DHA totaling $8,950.25, and **DENIED IN PART** as to all other alleged kickbacks based upon the deficiencies in the summary judgment evidence.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, as to Relator's claims regarding alleged kickbacks paid to the Turfitts, Rodriguez, and Roth, any responses to the Court's Rule 56(f) notice are due within 21 days from the date of this Order. Relator Estate of Robyn Turner's failure to respond or to adequately address the deficiencies in these particular claims may result in the entry of summary judgment and a dismissal of those claims.

**SO ORDERED AND ADJUDGED**, this the 20th day of December, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE